**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW HAMPSHIRE**

Christopher C. Chesley

v. Civil No. 15-cv-091-LM
Opinion No. 2015 DNH 129

PNC Bank, N.A.

**O R D E R**

This case involves a foreclosure dispute between the plaintiff mortgagor, Christopher C. Chesley, and the defendant mortgagee, PNC Bank, N.A. ("PNC"). PNC has filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). The court held a hearing on this matter on June 25, 2015. For the reasons that follow, PNC's motion to dismiss is granted in part and denied in part.

**Background**[1]

I. Loan History

In 2004, Mr. Chesley executed a promissory note in the amount of $140,189.00. In exchange, Mr. Chesley granted a mortgage on his home, located in Webster, New Hampshire, to National City Mortgage Co. ("National City"). According to the complaint, National City may have subsequently sold the loan to a trust administered by Ginnie Mae.[2]

---

[1] The facts are summarized from Mr. Chesley's Complaint for Damages and Injunctive and Declaratory Relief (doc. no. 1-1).

[2] Ginnie Mae is another term for the Government National Mortgage Association, a government-run lending organization.

In any event, beginning in 2012, Mr. Chesley experienced a series of unfortunate hardships which caused him to miss his mortgage payments. First, his home (on which the mortgage had been granted) was destroyed by fire. Next, according to the complaint, Mr. Chesley was forced to close down his food concession business when he received a bomb threat. And finally, he suffered injuries in a work-related motor vehicle accident.

After Mr. Chesley's missed payments, he applied for a loan modification with PNC.[3] He also filed for personal bankruptcy protection, naming PNC as one of his secured creditors. During this period of time, Mr. Chesley began making $1,100.00 monthly payments on his mortgage to PNC, which was less than the amount owed. PNC accepted these payments, which Mr. Chesley alleges is evidence that his loan modification application had been approved.[4] Mr. Chesley alleges that once he emerged from bankruptcy, however, PNC refused to continue accepting his reduced monthly payments.

---

[3] PNC has represented that it obtained Mr. Chesley's mortgage when it became the successor-in-interest to National City after the two entities merged.

[4] PNC vigorously denies that a loan modification was approved, and notes that the terms of the mortgage allowed it to accept partial payments without waiving its right to foreclose.

II. Foreclosure and Prior Legal Proceedings

The record suggests that PNC scheduled a foreclosure sale for June 10, 2013, at 2:00 p.m. That morning, Mr. Chesley sought an ex parte injunction (the "Ex Parte Action") barring the foreclosure in the Merrimack County Superior Court (the "Superior Court"). His petition initiating the Ex Parte Action is date stamped June 10, 2013, at 10:38 a.m. See Pl's Obj. to Def.'s Mot. to Dismiss, Ex. D (doc. no. 10-5). The next day, unaware that the foreclosure sale had already occurred on June 10, the Superior Court (Smukler, J.) entered a temporary injunction. Almost a year later, on May 27, 2014, a different justice of the Superior Court (McNamara, J.) dissolved the injunction on the grounds that it was moot because the foreclosure sale had already occurred. The Superior Court's May 27, 2014 order, however, noted that Mr. Chesley could still bring a claim for wrongful foreclosure. Id. at Ex. E. In August of 2014, some fourteen months after the sale, PNC filed the foreclosure deed in the Merrimack County Registry of Deeds.[5]

Mr. Chesley initiated this action in the Superior Court on November 24, 2014. Mr. Chesley's complaint asserts four claims:

[5] Though not entirely clear, the complaint suggests that Mr. Chesley's loan may have been guaranteed by the Department of Veterans Affairs ("VA"). Mr. Chesley alleges that at some point after the foreclosure sale, the VA temporarily took title to the property before transferring it back to PNC. It is unclear how these allegations relate to Mr. Chesley's claims for relief.

(1) PNC wrongfully foreclosed because it did not hold legal title to the mortgage; (2) PNC wrongfully foreclosed because it did not possess an original "blue-ink" copy of the note; (3) PNC failed to timely record the foreclosure deed; and (4) PNC granted a loan modification, but then breached the modification agreement by refusing to continue accepting Mr. Chesley's $1,100.00 monthly payments. PNC removed the case to this court, and has now filed the instant motion to dismiss.

**Legal Standard**

Under Rule 12(b)(6), the court must accept the factual allegations in the complaint as true, construe reasonable inferences in the plaintiff's favor, and "determine whether the factual allegations in the plaintiff's complaint set forth a plausible claim upon which relief may be granted." Foley v. Wells Fargo Bank, N.A., 772 F.3d 63, 71 (1st Cir. 2014) (citations omitted) (internal quotation marks omitted). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Analyzing plausibility is a "context-specific task" in which the court relies on its "judicial experience and common sense." Id. at 679.

**Discussion**

I. Counts I and II: Legal Title and the "Blue-Ink" Note

Counts I and II involve the issue of whether PNC had valid standing to foreclose on Mr. Chesley's property. In Count I, Mr. Chesley alleges that there is no evidence showing a chain of title to his mortgage between the original mortgagee, National City, and PNC. Specifically, Mr. Chesley notes that there is no assignment or other instrument conveying the mortgage from National City to PNC, and he alleges that at some point his loan may have been conveyed to Ginnie Mae. In Count II, Mr. Chesley alleges that PNC did not possess the original "blue-ink" note at the time of the foreclosure, which he contends is necessary to establish standing to foreclose.

PNC is entitled to dismissal of Counts I and II because Mr. Chesley's challenge to the validity of the foreclosure was initiated too late. New Hampshire law unequivocally requires that claims challenging the validity of a foreclosure sale be initiated and served on the defendant before the foreclosure sale occurs. See N.H. Rev. Stat. Ann. § 479:25(II) ("Failure to institute [a petition in the New Hampshire Superior Court seeking to enjoin the foreclosure sale] and complete service upon the foreclosing party, or his agent, conducting the sale prior to the sale shall thereafter bar any action or right of action of the mortgagor based on the validity of the

foreclosure.") (emphasis added); see also Neehan v. CitiMortgage, Inc., No. 13-cv-435-JD, 2013 WL 6195579, at *2 (D.N.H. Nov. 26, 2013) ("Any action or right of action of a mortgagor to challenge the validity of a foreclosure is barred unless the mortgagor instituted a petition to enjoin the foreclosure sale before it occurred."); Nardone v. Deutsche Bank Nat'l Trust Co., No. 13-cv-390-SM, 2014 WL 1343280, at *4 (D.N.H. Apr. 4, 2014).

Mr. Chesley initiated this action in the Superior Court on November 24, 2014. Thus, there is no dispute that this suit was initiated after the foreclosure sale, which took place on June 10, 2013.

In seeking to circumnavigate this obstacle, Mr. Chesley makes two arguments which must be addressed. First, Mr. Chesley argues that he did timely contest the validity of the foreclosure because he initiated the Ex Parte Action in the Superior Court on the morning of June 10, 2013. As noted previously, the Ex Parte Action was filed at 10:38 a.m. on June 10, 2013. Apparently before the Superior Court could consider the petition, the foreclosure sale went ahead as planned at 2:00 p.m. that same afternoon. On June 11, the next day, unaware that the foreclosure sale had been completed, the Superior Court issued a temporary injunction.

Thus, to be sure, Mr. Chesley did initiate the Ex Parte Action prior to the foreclosure sale, even if just in the nick of time. However, New Hampshire law requires not only that the mortgagor initiate the petition prior to the foreclosure sale, but that he effect service on the foreclosing party as well. See § 479:25(II). Here, it is undisputed that Mr. Chesley did not effect service on PNC prior to the foreclosure sale. Thus, he cannot demonstrate that he filed and served a timely challenge to the validity of the foreclosure sale.

Mr. Chesley next argues that the Superior Court "preserved" his right to file this action. As noted above, on May 27, 2014, a justice of the Superior Court dissolved the previously-issued injunction in the Ex Parte Action as moot because the foreclosure sale that it barred had already occurred. In its order, the Superior Court wrote that "[PNC] specifically agreed at the hearing on May 27, 2014 that [the dissolving of the injunction] would not bar any potential civil action which may be brought for wrongful foreclosure." See Pl.'s Obj. to Def.'s Mot. to Dismiss, Ex. E (doc. no. 10-6).

Mr. Chesley's argument that this language preserved his claim is intriguing because the Superior Court order of May 27, 2014, can be read in one of two ways. It can be read narrowly to permit Mr. Chesley to bring a claim specifically for wrongful foreclosure. Or, it can be read broadly to permit Mr. Chesley

to bring any action challenging the validity of the foreclosure. Either way, however, Mr. Chesley's argument must be rejected.

If construed narrowly, the Superior Court order contemplates only Mr. Chesley's right to bring an action for wrongful foreclosure. That theory of liability is specifically premised on the foreclosing party's failure to exercise due diligence in conducting the foreclosure sale, and thereby obtaining a price that is unfairly low. Claims for wrongful foreclosure do not, however, seek to challenge the validity of the sale itself. See Sykes v. RBS Citizens, N.A., 2 F. Supp. 3d 128, 138 (D.N.H. 2014) ("The New Hampshire Supreme Court has recognized a claim for wrongful foreclosure, brought after the foreclosure sale, where the foreclosing mortgagee did not exercise due diligence in conducting the mortgage sale and, as a result, did not get a fair price for the property. The court is not aware of any New Hampshire case that recognizes a claim for wrongful foreclosure based on a theory of invalid assignment.") (citations omitted).

Mr. Chesley captioned Counts I and II as claims for wrongful foreclosure (perhaps because of the language in the Superior Court order). This, however, elevates form over substance. Counts I and II focus solely on PNC's standing to foreclose; there are no allegations whatsoever that PNC failed to exercise due diligence in conducting the foreclosure sale, or

that PNC failed to obtain a fair market price. Thus, if the Superior Court order is read narrowly to permit only a claim for wrongful foreclosure, then PNC would be entitled to dismissal of Counts I and II because they are for an entirely different cause of action.

Even if this court were to read the Superior Court order broadly to mean that Mr. Chesley could bring any cause of action challenging the validity of the foreclosure, dismissal of Counts I and II would nevertheless be required. The New Hampshire Supreme Court has held that "[t]he only reasonable construction of the language in [Section 479:25(II)] . . . is that it bars any action based on facts which the mortgagor knew or should have known soon enough to reasonably permit the filing of a petition prior to the sale." Murphy v. Fin. Dev. Corp., 126 N.H. 536, 540 (1985); see also Khawaja v. Bank of N.Y. Mellon, No. 14-cv-117-PB, 2014 WL 4678260, at *3 (D.N.H. Sept. 18, 2014) ("In keeping with this well established rule, this Court has also repeatedly held that [Section 479:25(II)] bars any challenge to a foreclosure sale based on facts that the mortgagor knew about, or should have known about, before the sale.") (citing cases).

Mr. Chesley's complaint does not allege that he was unaware prior to the foreclosure sale that PNC had a right to foreclose on his property. Rather, his own allegations suggest that he

began missing mortgage payments as early as 2012, and subsequently attempted to arrange a loan modification with PNC. Likewise, when Mr. Chesley filed for bankruptcy in 2012, he listed PNC as the secured creditor holding a mortgage on his home. In other words, although Mr. Chesley had originally granted the mortgage in favor of National City, he knew that the mortgage was now held by PNC because he was dealing with PNC directly. Thus, any defects in the chain of title to his mortgage were known (or should have been known) to Mr. Chesley long before the morning of the foreclosure sale. Therefore, to the extent the Superior Court order preserved Mr. Chesley's right to challenge the validity of the foreclosure, Mr. Chesley could launch a successful challenge only if based on facts that could not have been known to him prior to the sale. Here, it is clear that Mr. Chesley's challenge is based on facts known to him prior to the sale.

In sum, Counts I and II challenge the validity of the foreclosure and PNC's standing to foreclose. Well-established New Hampshire law requires that any such claim be initiated and served on the defendant before the foreclosure sale occurs. Even after accepting the factual allegations in the complaint as true, and construing all inferences in Mr. Chesley's favor, Counts I and II do not set forth plausible claims upon which

relief may be granted. Foley, 772 F.3d at 71. Consequently, Counts I and II are dismissed.

II. Count III: Failure to Properly File Foreclosure Deed

Count III alleges that PNC violated N.H. Rev. Stat. Ann. § 479:26 by failing to file the foreclosure deed within sixty days of the foreclosure sale. Indeed, Mr. Chesley alleges, and PNC does not dispute, that although the foreclosure sale took place on June 10, 2013, PNC did not record the foreclosure deed until August 20, 2014, some fourteen months later. However, for reasons described below, Mr. Chesley does not have standing to assert this claim.

Section 479:26(I) provides that "[t]he person selling pursuant to the power [of sale] shall within 60 days after the sale cause the foreclosure deed . . . to be recorded in the registry of deeds in the county where the property is situated . . . ." Section 479:26(II) then continues: "[f]ailure to record said deed . . . within 60 days after the sale shall render the sale void and of no effect only as to liens or other encumbrances of record with the register of deeds for said county intervening between the day of the sale and the time of recording of said deed . . . ." (emphasis added).

Mr. Chesley would have the court interpret Section 479:26 as acting to void the foreclosure sale of his home. However, by its express terms, Section 479:26(II) acts to void a foreclosure

sale, but only insofar as a third party lienholder attempts to assert an interest in the subject property between the date of sale and the date of the recording.

In this case, Mr. Chesley is a defaulted mortgagor whose property has been sold at foreclosure, not a third party lienholder. In other words, he lacks standing to assert a violation of Section 479:26 because he no longer holds an interest in the property. See Barrows v. Boles, 141 N.H. 382, 393 (1996) ("The debtor possessed neither a legal nor an equitable interest in the property once the auctioneer's hammer fell and the memorandum of sale was signed.") (citations omitted) (internal alterations and quotation marks omitted).

In a recent case, Chief Judge LaPlante considered a nearly identical claim. See Calef v. Citibank, N.A., No. 11-cv-526-JL, 2013 WL 653951 (D.N.H. Feb. 21, 2013). In Calef, the plaintiff mortgagor alleged that the foreclosure deed was defectively executed and recorded. Chief Judge LaPlante rejected this argument because the plaintiff no longer held an equitable interest in the property following the foreclosure sale of his home. Chief Judge LaPlante wrote: "[E]ven where a foreclosure deed and affidavit are not recorded at all, that does not affect the validity of the foreclosure sale as to the mortgagor. It follows that where the recorded deed and affidavit are deficient

in some respect . . . that, too, is a matter of no concern to the mortgagor.”). Id. at *5.

The court agrees with Chief Judge LaPlante’s reading of Section 479:26 and finds that Mr. Chesley does not have standing to assert Count III. Therefore, this claim is dismissed.

III. Count IV: Breach of Contract

Count IV asserts a claim for breach of contract. Specifically, it alleges that PNC approved Mr. Chesley’s application for a loan modification and began accepting his $1,100.00 monthly payments, but then later reneged on the agreement and rejected his subsequent payments. For its part, PNC vigorously denies that it agreed to a loan modification, and points out – correctly – that the terms of the mortgage agreement permit it to accept partial payments from the mortgagor without waiving its right to foreclose.

“In ruling on whether a contract ha[s] been adequately pleaded, the trial judge [is] obligated to scrutinize the complaint rigorously and to use the facts as pled by the plaintiff. While alleged facts must be accepted as true, the trial court must determine whether those factual assertions would be sufficient to support the ultimate legal conclusion upon which any recovery must rest.” Provencal v. Vt. Mut. Ins. Co., 132 N.H. 742, 745 (1990) (citations omitted). Applying this standard, the court finds that the complaint adequately

pleads the existence of a loan modification agreement between Mr. Chesley and PNC, albeit barely. The complaint plausibly alleges that Mr. Chesley submitted a loan modification application proposing reduced monthly payments, and that PNC agreed to this proposal and began accepting his lower payments. See Durgin v. Pillsbury Lake Water Dist., 153 N.H. 818, 821 (2006) ("A valid, enforceable contract requires offer, acceptance, consideration, and a meeting of the minds.").

Of course, on summary judgment or at trial, PNC may prevail on this issue by establishing that it did not approve a loan modification for Mr. Chesley. Indeed, Mr. Chesley acknowledges that PNC never expressly informed him of any such approval, and his evidence as to the existence of a loan modification contract is circumstantial at best. But this sort of inquiry is not the object of the Rule 12(b)(6) process. See Cardigan Mountain Sch. v. N.H. Ins. Co., __ F.3d __, No. 14-2182, 2015 WL 3393771, at *5 (1st Cir. May 27, 2015) (quoting Bell Atl. Co. v. Twombly, 550 U.S. 544, 556, 570 (2007) ("[T]he factual allegations need only be enough to nudge the claim 'across the line from conceivable to plausible,' thus 'rais[ing] a reasonable expectation that discovery will reveal evidence of' [a loan modification agreement].")). For these reasons, the court finds that Mr. Chesley has adequately pled a breach of contract claim, and thus PNC's motion to dismiss must be denied as to Count IV.

## Conclusion

PNC's motion to dismiss (doc. no. 6) is granted in part and denied in part. Counts I, II and III are dismissed; Count IV, asserting a claim for breach of a loan modification agreement, remains.

SO ORDERED.

Landya McCafferty
United States District Judge

June 29, 2015

cc: Stephen T. Martin, Esq.
Thomas Kincaid McCraw, Jr., Esq.